IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Darnell Scott, ) | C/A No. 0:12-1538-BHH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Albert Pearson, *Responsible Authority over* ) | **REPORT AND RECOMMENDATION** |
| *South Carolina Dept. Of Corrections Special* ) | |
| *Investigation Unit*; Jannita Gaston, *South* ) | |
| *Carolina Dept. Of Correction State* ) | |
| *Classification*; William Byars, *South Carolina* ) | |
| *Dept. Of Corrections Director*; Warden ) | |
| Anthony Padula; Associate Warden Margaret ) | |
| Bell; Associate Warden John Brooks; Major ) | |
| James Dean; and Ms. Reames, *Institution* ) | |
| *Classification Chairperson*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff James Darnell Scott ("Scott"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment.[1] (ECF No. 87.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Scott of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 88.) Scott filed a response in opposition (ECF No. 90), to

---

[1] On August 13, 2013, the Honorable R. Bryan Harwell, United States District Judge, denied the defendants' February 26, 2013 motion for summary judgment (ECF No. 59) without prejudice. (Order, ECF No. 77.)



which the defendants replied (ECF No. 104). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

## BACKGROUND

Scott's Amended Complaint alleges that he was placed into a Special Management Unit ("SMU") due to an investigation related to a riot incident and due to his affiliation with a Security Threat Group ("STG") known as the United Blood Nation. Scott was subsequently designated as a Security Detention inmate, and the South Carolina Department of Corrections ("SCDC") began transferring Scott among facilities approximately every thirty days. Scott appears to assert that his due process rights under the Fourteenth Amendment have been violated due to his classification and the inability to contest it. Scott also alleges that these transfers have made it difficult for him to receive adequate medical care, and that the defendants have violated his Eighth Amendment rights by being deliberately indifferent to his medical needs.

Scott seeks injunctions against SCDC demanding a change in its classification and review policies, as well as monetary damages.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary



judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Defendants' Motion for Summary Judgment**

    **1.    Exhaustion of Administrative Remedies**

The defendants argue that Scott has failed to exhaust his administrative remedies with regard to his claims. A prisoner must exhaust his administrative remedies as required by the Prison



Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South



Carolina Administrative Law Court ("ALC") is generally part of the available administrative remedies an inmate must exhaust.[2] See Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)).

### a. Due Process Claim

Although the defendants argue that Scott failed to exhaust his administrative remedies "as to grievances on the issue of . . . custody level, [and] security threat group renunciation," they appear to concede that Scott did appeal grievance number BRCI-1625-10 to the Administrative Law Court. (Defs.' Mem. Supp. Summ. J., ECF No. 87-1 at 5.) This grievance concerned Scott's attempts to renounce his security threat group affiliation and his complaints that his attempts to obtain the paperwork necessary to do so were being thwarted, thus violating his due process rights. (ECF No. 104-2.) In his response to the defendants' motion, Scott argues that his due process claim in the instant matter was exhausted in that the STG renouncement forms that he sought in grievance BRCI-1625-10 were a "prerequisite" before Scott's custody status could be considered. (Pl.'s Resp. Opp'n

---

[2] South Carolina case law has established certain exceptions not applicable here. See Howard v. S.C. Dep't of Corr., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the ALC lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the ALC is without jurisdiction to hear facial challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); Howard, 399 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies).



Summ. J., ECF No. 90 at 6.)  Accordingly, as Scott has arguably exhausted his administrative remedies with regard to this claim, Scott's due process claim is evaluated on the merits below.[3]

### b.     Deliberate Indifference—Medical Needs

With regard to Scott's claim alleging that the defendants were deliberately indifferent to his medical needs, in part due to his repeated transfers every thirty days to a different institution, the defendants argue that while Scott filed Step 1 and Step 2 grievances with regard to his claims in grievance number MCCI-1181-11, he failed to appeal this grievance to the Administrative Law Court.  In response to the defendants' motion, Scott appears to concede that he did not appeal this grievance to the Administrative Law Court, but argues that this grievance was nonetheless exhausted because SCDC failed to respond to his Step 2 grievance within the time period required by SCDC policy and procedure.  (Pl.'s Resp. Opp'n Summ. J., ECF No. 90 at 2.)  Accordingly, it does not appear that Scott appealed the grievance with regard to his claim of deliberate indifference to his medical needs to the Administrative Law Court.  However, even if Scott were to have properly exhausted his administrative remedies, the defendants are nonetheless entitled to summary judgment for the reasons stated below.

### 2.     Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prevail on such a claim, Scott must first demonstrate that he was deprived of "life, liberty, or

---

[3] To the extent that Scott attempts to raise an independent due process claim based on allegations that he was placed in restrictive custody in the Administrative Segregation Unit at Lee Correctional Institution from December 2007 through June 2008 without receiving a hearing or notice of the reasons, Scott has not administratively exhausted this claim.



property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When the plaintiff's punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes "atypical and significant" hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest); see also Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life.") (quotation marks and citation omitted).

Scott alleges that his placement in administrative segregation deprived him of a liberty interest in that he was under a significant hardship in relation to ordinary incidents of prison life due to his custody status. (ECF No. 18.) Specifically, Scott alleges that he was deprived of many of the privileges afforded to inmates in the general population, such as daily showers, daily outdoor recreation, canteen privileges, educational programs, care packages, and participation in the annual talent show. (Id.) He also alleges that transferring him every thirty days is a strenuous hardship. (Id.) Scott has made no allegations or representations to the court that these actions have resulted in an increase in the sentence imposed.

"[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); see also McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994)



("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.' " (alterations in original)) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)). "An inmate has no liberty interest in remaining in the general prison population because administrative segregation is 'the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.' " Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).[4]  As the defendants' measures implicate no protected liberty interest, Scott has failed to show that their actions gave rise to the protection of the Due Process Clause by its own force.[5]  In fact, courts have found no protected interest implicated when the conditions alleged were much harsher than those Scott complains of here.  Compare Beverati, 120 F.3d at 502 (concluding that the conditions in administrative segregation—which included cells being infested with vermin, smeared with human feces and urine, flooded with water from a leak in the toilet on the floor above, and being unbearably hot; as well as inmates being forced to use their clothing and shampoo to clean the cells, receiving cold food in considerably smaller portions, failing to receive clean clothing, linen, or bedding as often as required by the regulations governing

---

[4] "[T]he Supreme Court has retreated from Hewitt, and the liberty interest determination no longer turns on whether or not a state law or regulation is mandatory." Morris v. York, C/A No. 0:13-1031-GRA, 2013 WL 2635610, *2 (D.S.C. June 12, 2013) (citing Sandin v. Connor, 515 U.S. 472 (1995)).

[5] The defendants have also construed this claim as alleging that the defendants' actions have violated Scott's Eighth Amendment right to be free from cruel and unusual punishment.  The court has not interpreted Scott's Amended Complaint to include such a claim; however, even construing Scott's Amended Complaint thusly, for the reasons stated by the defendants, they are entitled to summary judgment on this claim.  (Defs.' Mem. Supp. Summ. J. at 6-11, ECF No. 87-1 at 6-11.)



administrative segregation; being limited to leaving their cells three to four times per week; and being denied outside recreation and educational or religious services—were more burdensome than those imposed on the general prison population, but "they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life" and therefore did not implicate a liberty interest) with Wilkinson, 545 U.S. at 223-24 (finding that inmates did have a liberty interest in avoiding assignment to a state's "supermax" prison because the onerous conditions—which included prohibition of almost all human contact, lights remaining on for twenty-four hours, exercise for only one hour per day in a small indoor room, placement for an indefinite duration, and disqualification of an otherwise eligible inmate for parole consideration—when considered together imposed an atypical and significant hardship within the correctional context).

Moreover, to the extent that Scott's claim is based on an alleged violation of a prison policy, § 1983 provides relief from a violation of federal constitutional rights, not from a violation of prison-created policies or procedures. Keeler, 782 F. Supp. 42.  Violations of prison policies alone do not rise to the level of a constitutional deprivation. See id. at 44 (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); cf. Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (recognizing that, if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

### 3. Deliberate Indifference Claim—Medical Treatment

The standard of deliberate indifference, requiring an inmate to establish that a sufficiently serious deprivation occurred and that the prison official had a sufficiently culpable state of mind, also applies to medical indifference claims under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was



adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Scott alleges that his classification status—including the repeated transfers every thirty days—prevents him from receiving adequate health care. (Am. Compl., ECF No. 18-2 at 5.) Specifically, he alleges that (1) he is in need of new prescription eye glasses; (2) he has teeth that need to be filled and pulled; (3) he suffers from high blood pressure; and (4) and his mental health has worsened. (Id.)

As an initial matter, the named defendants are all non-medical personnel. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

In support of their motion for summary judgment, the defendants have provided Scott's medical records, a review of which shows that Scott was seen extensively by the various SCDC medical departments as evidenced by the nearly two hundred medical entries in an approximately four-year period. (See generally Medical Summary, ECF No. 87-26.) In addition, the defendants



point out that these encounters demonstrate that Scott received vision treatment, including eyeglasses; that he was seen regularly for mental health concerns; that Scott has had regular blood pressure checks; and that Scott received care for his dental needs, including medication and extractions. (Defs.' Mem. Supp. Summ. J., ECF No. 87-1 at 11-12.)

Although Scott argues, and the record shows, that several of Scott's scheduled medical appointments were delayed or rescheduled due to his transfers, no reasonable jury could find that these delays caused Scott serious harm or that they were the result of the defendants' "sufficiently culpable state of mind." Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); Parrish, 372 F.3d at 307 ("If a negligent response were sufficient to show deliberate indifference, the Supreme Court's explicit decision in Farmer to incorporate the subjective recklessness standard of culpability from the criminal law would be effectively negated."); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. June 6, 2008) (stating that an Eighth Amendment violation only occurs if the delay results in some substantial harm to the patient). The defendants have provided affidavit testimony demonstrating that Scott is an "extraordinary security risk" to both the institution where he is housed and the entire Department of Corrections. (See, e.g., Pearson Aff., ECF No. 87-24; Padula Aff., ECF No. 87-21); see Sandin, 515 U.S. at 483-84 ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."). In the face of this unrefuted evidence, no reasonable jury could find that any delay in medical treatment resulted from deliberate



indifference on the part of the defendants rather than the plaintiff's own actions that necessitated the thirty-day transfers. Moreover, Scott cannot demonstrate that the defendants' actions in denying his grievances or declining to process his grievance as "emergency" grievances rise to the level of deliberate indifference to a serious risk of harm. Scott has therefore failed to show that the deprivation was sufficiently serious such that it resulted in the denial of the minimal civilized measure of life's necessities or that the defendants actually knew of a substantial risk to Scott and disregarded that substantial risk. See Farmer, 511 U.S. at 847.

    **4.    Other Claims**

To the extent Scott is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

**RECOMMENDATION**

For the above reasons, the court recommends that the defendants' motion for summary judgment be granted. (ECF No. 87.)

_____

September 3, 2014　　　　　　　　　　　　　　　　Paige J. Gossett
Columbia, South Carolina　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).