UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Darnell Scott,<br><br>                    Plaintiff,<br>vs.<br><br>Albert Pearson, *Responsible Authority over South Carolina Dept. Of Corrections Special Investigation Unit*; Jannita Gaston, *South Carolina Dept. Of Correction State Classification*; William Byars, *South Carolina Dept. Of Corrections Director*; Warden Anthony Padula; Associate Warden Margaret Bell; Associate Warden John Brooks; Major James Dean; and Ms. Reames, *Institution Classification Chairperson*,<br><br>                    Defendants. | Civil Action No.: 0:12-1538-BHH<br><br>**OPINION AND ORDER** |

## BACKGROUND

The plaintiff, James Darnell Scott ("the plaintiff" or "Scott"), a state prisoner incarcerated at the McCormick Correctional Institution in McCormick, South Carolina, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 against the defendants, Albert Pearson, Jannita Gaston, William Byars, Warden Anthony Padula, Associate Warden Margaret Bell, Associate Warden John Brooks, Major James Dean, and Ms. Reames ("the defendants"), alleging violations of his constitutional rights. Specifically, the plaintiff alleges that his confinement in the Special Management Unit ("SMU") and frequent transfers between prison facilities violate his right to due process under the Fourteenth Amendment. Scott also alleges that the

1

defendants have been deliberately indifferent to his medical needs in violation of the Eighth Amendment. This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 for the District of South Carolina. The Magistrate Judge recommends that the defendants' motion for summary judgment be granted. (ECF No. 113.)

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation (the "Report") to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**<u>Summary Judgment</u>**

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the party moving for summary judgment carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996). "Summary

3

judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## **DISCUSSION**

The Report recommends that the defendants' motion for summary judgment be granted for three reasons: (1) the plaintiff has failed to exhaust his administrative remedies; (2) the plaintiff does not have a protected liberty interest in avoiding administrative segregation that is sufficient to implicate the Due Process Clause; and (3) the plaintiff has failed to present facts from which a reasonable jury could rule in his favor on his claims of medical indifference. Because the plaintiff has objected to the Report, the Court has conducted a *de novo* review of the entire record. The Court agrees with the Magistrate Judge's recommended disposition as set forth below.

1. **Exhaustion of Administrative Remedies**

To the extent that the Magistrate Judge recommends that Scott's claims be dismissed for failure to exhaust his administrative remedies on account of the fact that he failed to appeal to the Administrative Law Court ("ALC"), the Court declines to dispose of the case on these grounds. The undersigned is aware of several other judges within this district who have held that a prisoner is not required to appeal to the ALC in order to exhaust his administrative remedies. *See, e.g.*, *King v. Ozmint*, No. 0:11-CV-01455-RBH, 2013 WL 4680532, at *5 (D.S.C. Aug. 30, 2013); *Ward v. Byers,*

4

No. 8:12–cv–01480, 2013 WL1403220 at *5 (D.S.C. March 11, 2013), *R & R adopted,* 2013 WL 1404918 (D.S.C. April 5, 2013); *Brown v. Ford,* No. 9:11–0019, 2011 WL 4904437 at *2 n. 6 (D.S.C. Sept.15, 2011) *R & R adopted,* 2011 WL 4352320 (Sept. 16, 2011). Because the Court agrees with the Magistrate Judge that the plaintiff's substantive claims lack merit, it need not decide whether plaintiff is required to appeal to the ALC.

### 2. Due Process

The Court agrees with the Magistrate Judge that the defendants are entitled to summary judgment on Scott's due process claim. The Report accurately summarizes the applicable law regarding what Scott must establish to prevail on such a claim. Scott objects to the Magistrate Judge's finding that the defendants' measures, placing Scott in administrative segregation, do not implicate a protected liberty interest. Specifically, the Magistrate Judge compared the conditions alleged by Scott, which include the loss "of many of the privileges afforded to inmates in the general population, such as daily showers, daily outdoor recreation, canteen privileges, educational programs, care packages, and participation in the annual talent show," to the conditions alleged in *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), which the Fourth Circuit found did not implicate a protected liberty interest. (*See* ECF No. 113 at 8-9.) The plaintiffs in *Beverati* alleged that the conditions they faced in administrative segregation were much worse than those faced by prisoners in the general population:

> They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, [one inmate]

5

> submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

*Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997). Nevertheless, the Fourth Circuit found "that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* The Magistrate Judge reasonably concluded that the conditions alleged by Scott are considerably less harsh than those found insufficient in *Beverati*. (*See* ECF No. 113 at 8.)

Scott objects to the Magistrate Judge's reliance on *Beverati*, implying that the case has been superseded by the Supreme Court's ruling in *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). In *Wilkinson*, which is addressed in the Magistrate Judge's Report, the Supreme Court found that Ohio inmates had a constitutionally protected liberty interest in avoiding confinement at the Ohio State Penitentiary Supermax facility ("OSP"). Judge Norton has carefully distinguished *Wilkinson* from *Beverati* and cases like the one at hand. *See Incumaa v. Stirling*, No. 9:12-CV-3493-DCN, 2014 WL 958679 (D.S.C. Mar. 11, 2014); *Joyner v. Patterson*, No. 0:13-CV-2675-DCN, 2014 WL 3909531, at *5 (D.S.C. Aug. 11, 2014). For example, in *Incumaa*, he noted that "[e]ven though *Beverati* predates *Wilkinson,* at the very least it suggests that the bar for proving an atypical and significant hardship is quite high in the Fourth Circuit," and observed that "even since *Wilkinson* the Fourth Circuit has cited *Beverati* in rejecting the notion

6

that inmates enjoy a protected liberty interest in avoiding confinement in administrative segregation." *Id.* at *9 n.4.

Judge Norton also noted two additional factors that distinguished *Wilkinson* from *Beverati* and other cases challenging conditions common to forms of detention involving solitary confinement:

> [T]he Supreme Court in *Wilkinson* looked at the presence of two additional factors to find "an atypical and significant hardship" on inmates such that they had a liberty interest in avoiding it. *Id.* Those factors were the potentially indefinite length of detention and the fact that placement in administrative segregation disqualified otherwise eligible inmates for parole consideration. *Id.*

*Incumaa v. Stirling*, No. 9:12-CV-3493-DCN, 2014 WL 958679, at *10 (D.S.C. Mar. 11, 2014).[1]

The undersigned finds Judge Norton's analysis in *Incumaa* to be persuasive and largely applicable to the case at hand. As an initial matter, Scott is not subject to the level of isolation experienced by the inmates in *Wilkinson*, where the Court found that "Incarceration at OSP is synonymous with extreme isolation . . . . OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates . . . . It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact." *Wilkinson*, 545 U.S. at 214. Scott has not alleged that he is isolated to this extent, and

---

[1] *See Wilkinson*, 545 U.S. at 224 ("Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP.") (citations omitted)).

7

the evidence regarding his conduct while in the SMU indicates that he has the ability to communicate with other inmates. This distinction, while not necessarily dispositive, is significant. *See Incumaa*, 2014 WL 958679, at *10 ("Incumaa has not alleged the extreme isolation present in *Wilkinson*, which the Supreme Court also considered significant in finding a protected liberty interest.").

Like *Incumaa*, and unlike the inmates in *Wilkinson*, Scott has not alleged that his confinement in SMU has any impact on his eligibility for parole, or that he is even eligible for parole in the first place. Additionally, Scott's status is reviewed every thirty days, whereas the inmates in *Wilkinson* had their status reviewed only once a year. South Carolina also has a process through which inmates may renounce their affiliation with a "Security Threat Group" ("STG"), which may have a positive impact on their detention status. There is no indication that such an opportunity was available to the inmates in *Wilkinson*.

It appears that Scott availed himself of the STG renunciation program in March of 2010,[2] (*see* ECF No. 104-4), but he complains that he was initially prevented from doing so and that his renunciation has not resulted in a change in the conditions of his confinement. Given Scott's admittedly significant role as a leader in the Bloods and the violations he has accrued while incarcerated, it is not surprising that his renunciation has not resulted in an immediate change in his status. Scott has admitted that he was a "general" in the Bloods, (*see id.*), and he is not challenging the group's designation as an STG. The defendants have presented evidence indicating that Scott was involved in a substantial disturbance at the prison, that he has threatened the lives or safety of

---

[2] Scott's case differs from *Incumaa* in this respect, as the inmate in *Incumaa* did not appear to be willing to renounce his affiliation with his STG.

8

prison officials, and that he appears to exercise authority over other inmates. (*See, e.g.,* ECF No. 87-24.) Scott has not presented sufficient evidence to the contrary to create a genuine issue of material fact with regard to these allegations.

The Supreme Court has indicated that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Scott's case is hardly illustrative of some constitutional flaw in the process through which SCDC designates and reviews the assignment of inmates to administrative or disciplinary detention because it is not at all difficult to understand why prison officials have decided to place him in SMU and have been hesitant to return him to the general population. Scott has not directed the Court to any authority indicating that he has an independent right to the STG renunciation program, but the existence of the program is relevant to whether Scott's confinement in SMU should be considered indefinite. A policy requiring prison officials to automatically return to the general population any prisoner who renounces an affiliation with an STG would, for obvious reasons, be susceptible to manipulation and abuse. Thus, the fact that prison officials retain discretion even after an inmate has renounced his affiliation with STG does not render the renunciation program a sham, and the Court finds that the availability of the program is yet another factor that separates this case from *Wilkinson*.

In conclusion, the Court finds that the factors discussed above clearly distinguish Scott's case from *Wilkinson*. The Court agrees with the Magistrate Judge that *Beverati*

remains good law and that the defendants are entitled to summary judgment on the plaintiff's due process claims.  Accordingly, the plaintiff's objections are overruled.

### 3. Deliberate Indifference

The Magistrate Judge recommends that the defendants be granted summary judgment on Scott's deliberate indifference claim.  Scott objects to this recommendation on the grounds that the Magistrate Judge erred in describing what Scott must prove in order to establish deliberate indifference.  The Report states, "[a]lthough Scott argues, and the record shows, that several of Scott's scheduled medical appointments were delayed or rescheduled due to his transfers, no reasonable jury could find that these delays caused Scott serious harm or that they were the result of the defendants' 'sufficiently culpable state of mind.'"  (ECF No. 113 at 12 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).)  In support, the Magistrate Judge cites the Tenth Circuit's holding in *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) that "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."  The Magistrate Judge also cites *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008), where the Fourth Circuit held that "[a]n Eighth Amendment violation only occurs, . . . if the delay results in some substantial harm to the patient."

Scott argues that "all a reasonable Jury has to find is that the [alleged] delays exacerbated the injury or unnecessarily prolonged an inmate's pain."  (ECF No. 115 at 4.)  He appears to cite *Smith v. Smith*, 589 F.3d 736 (4th Cir. 2009) for the proposition that he is not required to prove that the delays caused him serious harm, but his reliance on the case is misplaced.  *Smith* involved a motion to dismiss, where the

10

defendant had conceded the issue of whether the medical need was sufficiently serious. *See Smith*, 589 F.3d at 738 ("The district court did not make a finding regarding whether or not the medical need at issue was sufficiently serious to meet the Eighth Amendment standard, and Nurse Smith conceded that she did not dispute this issue in her motion before the district court, her brief before this Court, or at oral argument."). Thus, the case is not on point.[3] Furthermore, the evidence in the record shows that Scott has, on numerous occasions, received medical attention for the issues about which he complains. That this treatment has not been as timely or effective as Scott would like is not enough to allow him to reach a jury on the question of deliberate indifference.

The plaintiff also argues that the Magistrate Judge improperly credited the testimony of prison officials regarding the reason for Scott's frequent transfers. Scott's disagreement with the assessment of prison officials regarding whether he poses a threat does not, without more, create a genuine issue of material fact. Scott has admitted that he was a high ranking member of the Bloods and has not set forth facts to contest the evidence presented by defendants regarding his affiliations with the gang, his possession of materials related to the gang, his apparent ability to exercise authority over other prisoners, and the threats he is alleged to have made against prison officials. Accordingly, the Court agrees with the Magistrate Judge that Scott cannot establish that the alleged delays in his medical treatment are the result of deliberate indifference on the part of prison officials.

---

[3] Scott also cites the Seventh Circuit's opinion in *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010), but *McGowan* is clearly distinguishable. The case involved dismissal for failure to state a claim under 28 U.S.C. § 1915A(b)(1) despite the fact that the plaintiff had alleged (with supporting documentation) that the delay in treatment had caused him "permanent structural damage to his oral and nasal cavity." *Id.*

11

## **CONCLUSION**

For the reasons set forth above, the Court agrees with the Magistrate Judge that the defendants are entitled to summary judgment. The plaintiff's objections are overruled, and to the extent it is consistent with this order, the Report is adopted and incorporated herein by reference.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment (ECF No. 87) is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 24, 2015
Greenville, South Carolina